UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CHRISTOPHER DITTMER #254675,

        Plaintiff,

v.

CORIZON HEALTH, INC., et al.,

        Defendants.
_____/

Case No. 20-CV-12147

Honorable Thomas L. Ludington

**ORDER GRANTING THE MDOC DEFENDANTS' MOTION TO DISMISS AND DISMISSING THE MDOC DEFENDANTS FROM THE CASE**

On August 11, 2020, Plaintiff Christopher Dittmer, a prisoner in the custody of the Michigan Department of Corrections ("MDOC"), filed a complaint against Defendants Corizon Health, Inc., Warden John Christensen, and numerous Corizon and MDOC employees. ECF No. 1. Plaintiff alleges that Defendants' failure to render adequate medical care caused him to develop terminal cancer. *Id.* Plaintiff seeks compensatory and punitive damages under 42 U.S.C. § 1983 for violations of his Fourth and Eighth Amendment rights. *Id.* On September 8, 2020, Defendants John Christiansen, Richard Russell, Jeanne Bitner, Stanley Kingsley, Barbara Hessbrook, and Patricia Lamb (collectively, the "MDOC Defendants") moved for summary judgment for failure to exhaust or, alternatively, to dismiss the complaint for failure to state a claim. ECF No. 6. For the reasons stated below, the MDOC Defendants' motion to dismiss will be granted and they will be dismissed from the case.

## I.

### A.

The MDOC Defendants' role in this case is largely limited to MDOC's three-step grievance process, governed by MDOC Policy Directive 03.02.130. Grievances are formal complaints filed by prisoners and are intended to address "violations of policy or procedure or unsatisfactory conditions of confinement that personally affect the grievant." *Id.* at PageID.111. A prisoner may file a Step I written grievance within five business days after "attempt[ing] to resolve the issue with appropriate staff." ECF No. 6-2 at PageID.114 (MDOC Policy Directive 03.02.130). Grievances and grievance appeals are considered filed on the date they are received. *Id.* With respect to form, the directive states, "The issues should be stated briefly but concisely. Information provided is to be limited to the facts (i.e., who, what when, where, why, how)." *Id.*

After the grievance is received, the grievance coordinator determines whether it is acceptable in form. *Id.* at PageID.115. A grievance may be rejected for many reasons, including being vague, duplicative, or untimely. *Id.* at PageID.112. Assuming the grievance survives initial screening, it is forwarded to an "appropriate respondent," as designated by the grievance coordinator pursuant to directive criteria. *Id.* at PageID.115. The respondent then reviews the grievance and investigates the underlying allegations, including interviewing the grievant if necessary. *Id.* at PageID.116. A Step I grievance must be responded to within 15 business days after receipt, and each response is reviewed by the respondent's supervisor. *Id.* at PageID.115. The grievant may appeal the Step I response to a Step II respondent within 10 business days of receiving the response. *Id.* The Step II respondent has 15 business days to respond. *Id.* The same process is observed for a Step III appeal except that the Step III respondent generally has 60 business days to respond. *Id.* at PageID.117. "The Step III response is final." *Id.*

**B.**

Plaintiff Christopher Dittmer is currently housed at Central Michigan Correctional Facility, where MDOC has contracted with Corizon Health, Inc. ("Corizon") to provide medical services to inmates. ECF No. 1 at PageID.2–3. Shortly after Plaintiff was placed in custody in September 2017, he began to complain of pain in his abdomen. *Id.* at PageID.9. At the time, Plaintiff was receiving regular treatment for hypothyroidism. ECF No. 6-3 at PageID.135 (Plaintiff's grievance record).[1] In early 2018, Plaintiff underwent diagnostic testing that revealed low hemoglobin, hematocrit, liver enzyme, and iron levels. ECF No. 1 at PageID.9. Medical providers diagnosed him with anemia. *Id.*

Knowing that cancer and liver problems can contribute to anemia, Plaintiff requested further diagnostic testing. *Id.* A John Doe Corizon provider told him that "further testing would not be done because it was 'too expensive'" and that Corizon has an "unwritten policy . . . to cut costs as often as possible." *Id.* Plaintiff did not receive any anemia treatment other than B-12 shots. *Id.* On December 17, 2018, during a chronic care visit, Plaintiff signed a Release from Responsibility (the "Release") waiving his right to future treatment for hypothyroidism and anemia *Id.* at PageID.10; ECF No. 6-3 at PageID.129. Plaintiff was not wearing his glasses at the time and signed at the direction of a John Doe Corizon provider.[2] ECF No. 1 at PageID.10. The provider

---

[1] "In addition to evaluating the sufficiency of the factual allegations within the four corners of a complaint, courts may consider any exhibits attached to the complaint, matters of public record, and exhibits attached to a defendant's Rule 12 motion, provided that the latter are referred to in the complaint and are central to the claims therein." *Sherer v. Bank of New York Mellon*, No. 14-CV-12641, 2015 WL 4935614, at *3 (E.D. Mich. Aug. 18, 2015) (citing *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir.2008)). The MDOC Defendants have filed copies of Plaintiff's grievances, responses, and appeals in support of their motion. *See* ECF No. 6-3. These documents are central to Plaintiff's claims, and he repeatedly cites to them. *See, e.g.*, ECF No. 8 at PageID.155–156 (citing to grievance in exhibit).

[2] Although Plaintiff refers to this provider as a John Doe, he seems to identify the provider on a March 16, 2020 MDOC form as "N.P. Wilson." ECF No. 6-3 at PageID.128. It is unclear whether this "N.P. Wilson" is Defendant Susan Wilson.

"did not tell [Plaintiff] the truth about the form," which Plaintiff thought only waived thyroid treatment. *Id.*

After his anemia diagnosis, Plaintiff continued to experience abdominal pain. *Id.* at PageID.10. The pain appeared to be related to Plaintiff's gall bladder.[3] *Id.* at PageID.10. At some point, Plaintiff complained of his pain to a John Doe Corizon provider. *Id.* The provider told him that Defendants John Papendick, a Corizon physician, and Jeffrey Bomber, the Corizon state medical director, "aren't going to do anything for a gall bladder problem." *Id.* Defendants Papendick and Bomber are allegedly in charge of approving inmate treatments. *Id.*

At some point in June 2019, Plaintiff was diagnosed with cancer. *Id.* at PageID.11. In July 2019, Plaintiff sent a kite to Defendant Susan Wilson, a Corizon nurse practitioner, complaining of severe abdominal pain and requesting antibiotics given his previous bouts with food poisoning. *Id.* at PageID.11. Defendant Wilson told him "he couldn't possibly have a reason to try antibiotics" and forwarded the kite to a provider for review. *Id.* In another kite to Defendant Wilson, Plaintiff stated that the "area below his rib cage was getting extremely painful." *Id.* He suggested that it could be from the recent cancer finding and requested an MRI. *Id.* A John Doe Corizon provider authorized a colonoscopy but no MRI. *Id.* The colonoscopy revealed ileocecal cancer.[4] *Id.*

---

[3] It is somewhat unclear how the gall bladder explanation originated. In a November 2019 grievance (discussed *infra*), Plaintiff states,

> I frequently complained about fatigue and an ongoing pain beneath my right rib cage. I spoke to several different authorities about this matter over several months. I told them they were looking at possible gall bladder problems prior to incarceration and that no gall stones were found . . . They never had an answer when I asked "what if it isn't the gall bladder."

ECF No. 6-3 at PageID.135.

[4] Plaintiff's diagnosis timeline seems inconsistent. While the complaint simply states that Plaintiff was diagnosed in June 2019, his MDOC records indicate that he was diagnosed *after* the July colonoscopy. *See* ECF No. 6-3 at PageID.133. In fact, Plaintiff's response brief states that he was diagnosed in July 2019, not June. ECF No. 8 at PageID.154. The discrepancy is ultimately immaterial for this opinion but worth noting.

At some point thereafter, Plaintiff was scheduled for a surgery consultation. In August 2019, he sent a kite to Defendant Wilson asking why he was not receiving a PET scan before the consultation. *Id.* at PageID.12. He stated that the PET scan was necessary to ensure that "nothing [was] left to kill [him] later." *Id.* He also reminded Defendant Wilson that he was experiencing pain in "a couple of other areas," including his gall bladder. *Id.* MDOC Defendant Stanley Kingsley, a nurse, "reviewed the [k]ite and signed off on it." *Id.* The next day, diagnostic testing revealed differentiated adenocarcinoma of the colon. *Id.* Further diagnostic testing in late August revealed lesions on Plaintiff's liver and spleen, suggesting that, since his diagnosis, "the cancer had metastasized." *Id.* At the time, he had not started cancer treatment. *Id.*

In September 2019, Defendant Jordan Block, a Corizon physician assistant, ordered a PET/CT scan. *Id.* at PageID.13. The scan revealed that cancer had consumed "nearly half" of Plaintiff's liver and spread to his lymph nodes, kidneys, lungs, and urinary bladder. *Id.* Later in September, Plaintiff sent a kite to another nurse, MDOC Defendant Barbara Hessbrook, asking for an increase in pain medication and questioning why he had not started radiation and chemotherapy. *Id.* at PageID.14. In response, Plaintiff received increased pain medication but no further treatment. *Id.* In October 2019, a John Doe Corizon provider ordered diagnostic blood testing. *Id.* A subsequent right hemicolectomy and liver biopsy revealed that the cancer was "grossly metastatic" in both lobes of the liver. *Id.* Plaintiff was still not receiving any chemotherapy or radiation treatment. *Id.*

## C.

On November 13, 2019, Plaintiff filed two grievances, STF 19-11-1108-12F1 and STF 19-11-1116-28A. ECF No. 6-3 at PageID.134–35, 141–43. On December 10, 2019, he filed another

grievance, STF 19-12-1202-08A. *Id.* at PageID.126. The procedural history of each grievance is considered below.

**1.**

Plaintiff described the issue in Grievance 12F1 as "inadequate health care treatment," adding, "S.T.F. health care denied me early detection and treatment of my cancer, in effect killing me." *Id.* at PageID.135. In support, Plaintiff represented that he had been complaining of abdominal pain since around June 2018 to no avail. *Id.* He also characterized the diagnostic testing performed after his initial cancer diagnosis as an "inexcusable" delay. *Id.* For relief, Plaintiff asked to "[b]egin chemotherapy and radiation treatments immediately." *Id.*

On November 14, 2019, Plaintiff began cancer treatment. ECF No. 1 at PageID.16. On November 26, 2019, Defendant H. Van Dussen, a "health unit manager," denied Grievance 12F1. ECF No. 6-3 at PageID.136. Defendant Van Dussen noted that "[Plaintiff] has continued to receive evaluation and treatment for metastatic cancer." *Id.* He also found no record of abdominal pain complaints prior to July 2019.[5] *Id.* Plaintiff appealed the denial to Step II where, on February 3, 2020, it was upheld by the respondent nurse MDOC Defendant Patricia Lamb. ECF No. 1 at PageID.16. Defendant Lamb concluded that while "[Plaintiff's] concern and sense of urgency is acknowledged and understood[,] [i]t appears that testing and treatment were completed in as timely a manner as possible and in a manner consistent with the recommendations of the specialists." ECF No. 6-3 at PageID.133. Plaintiff's Step III appeal was received on February 28, 2020 and rejected as untimely. *Id.* at PageID.131.

---

[5] Plaintiff claims that Defendant Van Dussen either "blatantly ignored [Plaintiff's] previous requests and medical record" or that Defendants "falsif[ied] [his] medical record to remove his requests for treatment." ECF No. 1 at PageID.15.

-6-

**2.**

Grievance 28A is identical in content to 12F1, except that 28A describes the issue as "deliberate indifference to a serious medical need." *Id.* at PageID.141–43. On November 14, 2019, Grievance 28A was rejected at Step I as duplicative of Grievance 12F1. *Id.* at PageID.141. Plaintiff appealed the Step I rejection, arguing that Grievance 28A could not have been a "duplicate" because the grievance procedures require a "separate grievance form for each issue." *Id.* at PageID.139. On December 18, 2019, the Step II respondent and warden of the facility, MDOC Defendant John Christiansen, upheld the rejection without comment. *Id.* at PageID.140. On January 21, 2020, MDOC Defendant Richard Russell, the Step III respondent and grievance coordinator, also upheld the rejection without comment.[6] *Id.* at PageID.138.

**3.**

Grievance 08A requested that Plaintiff's medical record be amended because he never intended to waive treatment for anemia when he signed the Release. *Id.* at PageID.130. He only intended to waive future thyroid treatments *Id.* On December 20, 2019, the Step I respondent nurse, MDOC Defendant Jeanne Bitner, denied the grievance. *Id.* at PageID.127. She relied on the signed Release and Plaintiff's "history of refusing treatment and diagnostic tests." *Id.* Plaintiff appealed to Step II, where MDOC Defendant Lamb responded on February 26, 2020. *Id.* at PageID.125. Defendant Lamb confirmed that Plaintiff had a visit with "C. Wilson, NP" on December 17, 2018 but could "neither confirm nor refute [Plaintiff's] claim re[garding] the accuracy of the [Release]." *Id.* She advised Plaintiff to submit a form CHJ-227 (Amendment of Health Record

---

[6] In the complaint, Plaintiff alleges that Defendant Christiansen "reversed the denial" and then Defendant Russell "denied the entire grievance at Step III." ECF No. 1 at PageID.18. Plaintiff's grievance record, however, unequivocally shows that Defendants Christiansen and Russell both upheld the rejection. ECF No. 6-3 at PageID.138–40. Because Plaintiff's response brief seems to agree with the version presented in the record, that version is adopted here. *See* ECF No. 8 at PageID.170 ("[Grievance 28A] was reviewed by Defendant [Christiansen] and he still upheld the rejection.").

Documentation) to the Medical Records Examiner. *Id.* She stated that the form would then be forwarded to the provider who prepared the Release. *Id.* If the provider agreed to Plaintiff's amendment, the amendment would be adopted. *Id.* Defendant Lamb thus marked Grievance 08A as "partially resolved." *Id.*

On March 16, 2020, Plaintiff submitted a form CHJ-227, as suggested, requesting that his medical record be amended to correct the waiver of anemia treatment in the Release. *Id.* at PageID.128. In the form, Plaintiff identifies "N.P. Wilson" as the person he "signed for." *Id.* Plaintiff claims that he spoke with "N.P. Wilson" on March 2, 2020 and that she "agreed it was a possible mistake or misunderstanding and that she would sign to fix this." *Id.* It is unclear what happened with the form CHJ-227 after it was submitted. Plaintiff's Grievance Report indicates that a Step III appeal was received on April 6, 2020. *Id.* at PageID.122. On May 29, 2020, Defendant Russell, the Step III respondent, treated Defendant Lamb's Step II response as a denial and upheld it without comment.[7] *Id.* at PageID.123.

### D.

On January 14, 2020, Plaintiff was en route to cancer treatment in Lansing, Michigan when he was turned back and told the appointment was cancelled. ECF No. 1 at PageID.19. Plaintiff's oncologist explained that "the treatment was cancelled because the MDOC medical department failed to schedule transportation for his January 7, 2020 visit."[8] *Id.* at PageID.19. As a result,

---

[7] It is unclear why Defendant Russell treated the Step II response as a denial when Defendant Lamb marked Grievance 08A as "partially resolved." Indeed, one of the options available on Defendant Russell's Step III Grievance Response Form provided, "The Step II response on the merits was only PARTIALLY RESOLVED, however, this grievance is now considered RESOLVED." ECF No. 6-3 at PageID.123.

[8] This January 7 visit is not mentioned anywhere else in the complaint.

Plaintiff suffered a "two or three week[]" delay in chemotherapy, for which he faults Defendants Papendick and Bomber, given that they control treatment scheduling.[9] *Id.* at PageID.19–20.

Given the severity of Plaintiff's cancer, there is now "no amount of treatment that can remove all of the cancer in [his] body without effectively killing him." *Id.* at PageID.20. Furthermore, his oncologist states that "even one month without chemo could result in his untimely death." *Id.* Plaintiff represents that "[f]urther chemotherapy [] has not been approved" and that he is currently receiving no cancer treatment. *Id.* As a result, Plaintiff is "experiencing pain from his cancer as well as severe depression." *Id.* at PageID.21–22.

### E.

On August 11, 2020, Plaintiff brought this action against Defendants Corizon Health, Inc., John Christiansen, Richard Russell, Keith Papendick, Jeffrey Bomber, Jordan Block, Susan Wilson, Jeanne Bitner, H. Van Dussen, Stanley Kingsley, Barbara Hessbrook, Patricia Lamb, John Doe Corizon providers 1–10, and John Doe MDOC Nurses 1–10. ECF No. 1. Plaintiff alleges three § 1983 claims against all Defendants: deliberate indifference to a serious medical need in violation of the Eighth Amendment (Count I); failure to intervene in violation of the Fourth Amendment (Count II); and a civil conspiracy to violate his constitutional rights (Count III). *Id.* at PageID.22–26

On September 8, 2020, the MDOC Defendants moved for summary judgment under Rule 56, citing Plaintiff's alleged failure to exhaust his administrative remedies. ECF No. 6. Alternatively, the MDOC Defendants have moved to dismiss the complaint under Rule 12(b)(6) for failure to state a claim. *Id.* Timely response and reply briefs have been filed. ECF Nos. 8, 9.

---

[9] The complaint states that Plaintiff formally grieved this incident on January 21, 2020, but Plaintiff's MDOC Grievance Report reveals no such grievance. *See* ECF No. 6-3 at PageID.122. The entire incident goes unmentioned in Plaintiff's response brief.

## II.

Under Rule 12(b)(6), a pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movants' favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 679–79 (quotations and citation omitted).

## III.

The MDOC Defendants argue that the complaint should be dismissed under Rule 12(b)(6) for failure to state a claim. As part of their argument, the MDOC Defendants assert qualified immunity. ECF No. 6 at PageID.102–06. However, "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity. Although an officer's entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." *Wesley v. Campbell*, 779 F.3d 421, 434–35 (6th Cir. 2015) (collecting cases) (internal citations and quotation marks omitted); *see also Dahl v. Kilgore*, No. 3:18-CV-501-CRS, 2018 WL 6574785, at *3 (W.D. Ky. Dec. 13, 2018) ("Qualified immunity is a fact-intensive inquiry and is best resolved after

discovery . . . ."). Nonetheless, even without the added burden of qualified immunity, Plaintiff fails to plausibly state a claim against the MDOC Defendants.[10]

**A.**

Count I alleges that Defendants were deliberately indifferent to his complaints of pain and treatment needs, thereby proximately causing his terminal cancer. ECF No. 1 at PageID.22–23. An Eighth Amendment deliberate indifference claim has an objective and subjective component. *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). "First, the failure to protect from risk of harm must be objectively sufficiently serious." *Id.* "[W]hen an inmate had a medical need diagnosed by a physician as mandating treatment, the plaintiff can establish the objective component by showing that the prison failed to provide treatment, or that it provided treatment so cursory as to amount to no treatment at all." *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018) (internal citations and quotation marks omitted). "But when an inmate has received on-going treatment for his condition and claims that this treatment was inadequate, the objective component of an Eighth Amendment claim requires a showing of care 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* (quoting *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005)). For the subjective component, the prisoner must prove "that each defendant 'subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk' by failing to take reasonable measures to abate it." *Id.* at PageID.738 (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

Furthermore, as for any claim under § 1983, Plaintiff's "allegations must demonstrate that each defendant [], through his or her own individual actions, *personally* violated [P]laintiff's

---

[10] Accordingly, the MDOC Defendants' motion for summary judgment based on the failure to exhaust will be denied as moot.

rights." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (emphasis in original) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). "It is well-settled that [g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of respondeat superior." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (internal quotation marks omitted).

Disregarding the objective component, the complaint states neither a culpable mental state nor personal involvement of the MDOC Defendants. With respect to Defendants Hessbrook and Kingsley, Plaintiff alleges that he was "very vocal [to them] about his pain." ECF No. 1 at PageID.15. He states that in August 2018, Defendant Kingsley "reviewed" and "signed off" on a kite to Defendant Wilson, where Plaintiff complained that he had not received a PET scan and that his "gall bladder hurt like crazy." *Id.* at PageID.12. Similarly, he claims that in September 2018, he sent a kite to Defendant Hessbrook "asking why he hadn't started radiation or chemotherapy since being diagnosed." *Id.* at PageID.12. Accepting Plaintiff's allegations as true, there is no indication that Defendants Hessbrook and Kingsley knowingly disregarded a substantial risk that Plaintiff would develop terminal cancer, or that they even had personal knowledge of his diagnosis and treatment. At most, Plaintiff's sparse allegations show that Defendants Hessbrook and Kingsley were negligent, but "deliberate indifference entails something more than mere negligence." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Indeed, "[t]he subjective requirement is designed to prevent the constitutionalization of medical malpractice claims." *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 446–47 (6th Cir. 2014). For similar reasons, the complaint fails to state the personal involvement of Defendants Hessbrook and Kingsley. *See Phillips v. Roane Cty., Tenn.*, 534 F.3d 531, 543 (6th Cir. 2008) ("At a minimum a plaintiff must show that the official at

least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct . . . .").

The same analysis applies for Defendants Christiansen, Russell, Bitner, and Lamb. Moreover, their involvement with Plaintiff's treatment was limited to the grievance process,[11] and the Sixth Circuit has repeatedly held that "[a] defendant's involvement in the denial of an administrative grievance is insufficient to show personal involvement in the alleged unconstitutional conduct."[12] *Norman v. Granson*, No. 18-4232, 2020 WL 3240900, at *3 (6th Cir. Mar. 25, 2020) (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)); *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) ("The denial of administrative grievances or the failure to act by prison officials does not subject supervisors to liability under § 1983.") (internal quotations omitted); *Martin v. Harvey*, 14 F. App'x 307, 309 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."); s*ee also Manley v. Smith*, No. 1:11-CV-163, 2012 WL 967569, at *4 (W.D. Mich. Feb. 14, 2012) (granting summary judgment to nurse defendant who denied grievance despite claim that denial delayed medical care) *report and recommendation adopted*, No. 1:11-CV-163, 2012 WL 967099 (W.D. Mich. Mar. 21, 2012).

Plaintiff has not identified a single case of this Circuit where a prison official was found deliberately indifferent for denying a grievance.[13] In fact, this Court has rejected a similar theory

---

[11] Although Defendants Christiansen and Russell are sued in their supervisory capacities, the allegations against them concern their role as respondents. For example, Plaintiff's fundamental allegation against Defendants Christiansen and Russell is that they "purposefully avoided conducting more than a cursory review of Plaintiff's very serious accusations." ECF No. 8 at PageID.169. However, a "mere failure to act will not suffice to establish supervisory liability," and the Sixth Circuit "ha[s] long held that supervisory liability requires some active unconstitutional behavior on the part of the supervisor." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016).

[12] Plaintiff's reliance on *Allen v. Caruso*, No. 08-14252, 2009 WL 3063315 (E.D. Mich. Sept. 18, 2009), is misplaced. *Allen* simply recited the well-accepted proposition that a prison official "can be held liable if he is aware that an inmate's health or safety is seriously at risk and, despite such knowledge, fail[s] to take reasonable measures to abate the risk." *Allen*, 2009 WL 3063315 at *4 (internal quotation marks). *Allen* did not hold that a prison official could be liable for unconstitutional conduct because she denied a grievance related to such conduct.

[13] One case that comes close is *Hill v. Marshall*, 962 F.2d 1209, 1213 (6th Cir. 1992), which goes unexamined in the briefing. In *Hill*, the Sixth Circuit held that a prison official could be liable in his supervisory capacity where he "abandon[ed] the specific duties of his position—reviewing and responding to inmates' complaints about medical

of liability before. In *Coates v. Jurado*, No. 12-15529, 2013 WL 5372808 (E.D. Mich. Sept. 25, 2013), an MDOC nurse practitioner denied the plaintiff a hearing aid despite his history of hearing loss. *Coates*, 2013 WL 5372808 at *2. The plaintiff filed a grievance, which was escalated to Step II after the prisoner received no response. *Id.* The Step II respondent, an MDOC nurse, denied the grievance and noted that Plaintiff was being treated by a medical provider. *Id.* The plaintiff then filed a complaint alleging that the nurse was deliberately indifferent to his hearing needs. *Id.* at *3. Relying on *Shehee*, the Magistrate Judge recommended summary judgment for the nurse because she was not personally involved in the alleged misconduct. *Id.* *5. The plaintiff objected that "given [the nurse's] power to rectify the situation when addressing his Step II grievance, her refusal to do so rendered her complicit in the denial of his medical care." *Id.* District Judge Duggan overruled this objection. As Judge Duggan explained, there was no evidence that the defendant "had actual knowledge of [the provider's] alleged misconduct" or that she "knew or believed that [the plaintiff] was not receiving adequate medical treatment." *Id.* at *6.

Plaintiff attempts to distinguish *Coates* by noting that his grievances were denied "despite evidence in [his] grievances that he was not receiving adequate medical treatment for a very serious illness." ECF No. 8 at PageID.167. However, the *Coates* plaintiff similarly emphasized "that [the nurse] had medical records demonstrating that he suffered from hearing loss." *Coates*, 2013 WL 5372808 at *2. Plaintiff's argument is no more persuasive here than it was in *Coates*. Accordingly, Count I will be dismissed as to the MDOC Defendants.

---

needs—in the face of actual knowledge of a breakdown in the proper workings of the department." *Hill*, 962 F.2d at 1213. The official was referring prisoners who complained of not getting medication to the head nurse "whom he knew to be wrongly altering and destroying some of the inmates' prescriptions." *Id.* In this case, Plaintiff has not plausibly alleged such conscious disregard.

**B.**

Count II alleges that the MDOC Defendants violated Plaintiff's Fourth Amendment rights by failing to intervene in his medical treatment despite the "opportunity and means to prevent the unlawful deliberate indifference." ECF No. 1 at PageID.23–24. Plaintiff's theory seems premised on a misunderstanding of the Fourth and Eighth Amendments. "The Fourth Amendment prohibits the use of excessive force by arresting and investigating officers." *Smoak v. Hall*, 460 F.3d 768, 783 (6th Cir. 2006). As a corollary, "a police officer has a duty to try and stop another officer who summarily punishes a person in the first officer's presence." *McHenry v. Chadwick*, 896 F.2d 184, 188 (6th Cir. 1990) (citing *Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir. 1982)). The Sixth Circuit has extended this duty to correctional officials, including hospital security and nurses. *McHenry*, 896 F.2d at 188 ("[A] correctional officer who observes an unlawful beating may, nevertheless, be held liable under § 1983 without actively participating in the unlawful beating"); *Durham v. Nu'Man*, 97 F.3d 862, 868 (6th Cir. 1996) (holding that jury could find hospital security officer and nurse liable for failing to intervene while inmate was assaulted by hospital security).

However, the Sixth Circuit has never extended the failure to intervene to medical treatment—and for good reason. In addition to prohibiting deliberate indifference to a prisoner's medical needs, *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), the Eighth Amendment—not the Fourth—protects prisoners from excessive force. *Hopper v. Phil Plummer*, 887 F.3d 744, 751 (6th Cir.) (internal citation omitted), *reh'g denied* (May 1, 2018), *cert. denied sub nom. Plummer v. Hopper*, 139 S. Ct. 567 (2018). Consequently, extending the failure to intervene to medical treatment would entangle two distinct Eighth Amendment protections. In fact, every failure-to-intervene case cited by Plaintiff involved excessive force under the Eighth Amendment. *See, e.g.*, *Durham v. Nu'Man*, 97 F.3d 862, 868 (6th Cir. 1996); *McHenry v. Chadwick*, 896 F.2d 184, 188

(6th Cir. 1990; *Penman v. Correct Care Sols.*, No. 5:18-CV-58-TBR, 2018 WL 6242153, at *5 (W.D. Ky. Nov. 28, 2018). The lone exception is *Bunkley v. City of Detroit, Michigan*, 902 F.3d 552 (6th Cir. 2018), which concerned a false arrest in violation of the Fourth Amendment.[14]

This leaves two possibilities. Either Count II presents a duplicative deliberate indifference claim—which should be dismissed like Count I—or it presents a novel theory of liability that would vitiate deliberate indifference and dramatically expand Eighth Amendment liability. The latter possibility is simply untenable. As the Sixth Circuit recently explained,

> In *Estelle*, the Supreme Court first acknowledged that the Eighth Amendment could be applied to some deprivations that were not specifically part of the sentence but were suffered during imprisonment. But because only the unnecessary and wanton infliction of pain implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege deliberate indifference to his serious medical needs. It is *only* such indifference that can violate the Eighth Amendment.

*Rhinehart v. Scutt*, 894 F.3d 721, 736 (6th Cir. 2018) (internal citations and quotation marks omitted) (emphasis original). Accordingly, Count II will be dismissed as to the MDOC Defendants.[15]

## C.

Count III alleges that Defendants conspired with one another to deprive Plaintiff of adequate care. ECF No. 1 at PageID.25–26. To prove a civil conspiracy, Plaintiff must show that "there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury

---

[14] Admittedly, *Bunkley* framed the failure to intervene in general terms, implying that it might apply to any unlawful omission. *See Bunkley*, 902 F.3d 552, 565 (6th Cir. 2018) ("[A] law enforcement officer can be liable under § 1983 when by his inaction he fails to perform a statutorily imposed duty to enforce the laws equally and fairly . . . Acts of omission are actionable in this context to the same extent as are acts of commission.") (quoting *Smith v. Ross*, 482 F.2d 33, 36–37 (6th Cir. 1973)). Even so, *Bunkley* concerned false arrest, a classic Fourth Amendment violation, not deliberate indifference under the Eighth Amendment.

[15] Of course, even if Plaintiff's theory were cognizable, it would still be dismissed as to Defendants Christiansen, Russell, Bitner, and Lamb because their only involvement was through the grievance process. *See* Section III.A., *supra*.

to the complainant." *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (quoting *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985)). "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). However, the Sixth Circuit "do[es] not require direct evidence; it is enough to produce circumstantial evidence sufficient to reasonably infer the existence of a conspiracy." *Jacobs v. Alam*, 915 F.3d 1028, 1043 (6th Cir. 2019).

> The conspiracy against Plaintiff allegedly took "several forms":
>
> a. Defendants intentionally misled Dittmer to get him to waive his anemia treatment.
>
> b. Defendants received multiple complaints from Dittmer about his pain and concerns about lack of care, both verbal and written, and refused to act in accordance with law; and
>
> c. Defendants, at all relevant times, had access to all of Dittmer's medical records and were aware of his condition and chose not to do anything to help him.

*Id.* at PageID.25. The MDOC Defendants argue that Plaintiff's allegations are impermissibly vague and conclusory. ECF No. 6 at PageID.100–01. Plaintiff contends, "It is reasonable inference [sic] that the repeated denial of Plaintiff's grievance at all levels was part of the conspiracy to allow an Eighth Amendment deliberate indifference to a serious medical need violation to continue indefinitely." ECF No. 8 at PageID.175.

Plaintiff's suggestion is unconvincing. The conspiracy claim consists of a few vaguely stated instances where the MDOC Defendants reviewed Plaintiff's kites or denied his grievances. Plaintiff alleges no specific facts from which one could infer that these actions were undertaken in concert or that the MDOC Defendants had any sort of agreement with one another. Plaintiff's insistence that the repeated denial of his grievances was "part of the conspiracy" just begs the question. While a conspiracy may be pled with circumstantial evidence, "circumstantial evidence

alone cannot support a finding of conspiracy when the evidence is equally consistent with independent conduct." *Re/Max Int'l, Inc. v. Realty One, Inc.*, 173 F.3d 995, 1009 (6th Cir. 1999). Accordingly, Plaintiff's blanket allegations do not permit an inference that the MDOC Defendants were conspiring with one another to deprive Plaintiff of adequate medical care. Count III will be dismissed as to the MDOC Defendants.

**IV.**

Accordingly, it is **ORDERED** that the MDOC Defendants' Motion to Dismiss, ECF No. 6, is **GRANTED**.

It is further **ORDERED** that Defendants John Christiansen, Richard Russell, Jeanne Bitner, Stanley Kingsley, Barbara Hessbrook, and Patricia Lamb are **DISMISSED**.

Dated: November 6, 2020                          s/Thomas L. Ludington
                                                 THOMAS L. LUDINGTON
                                                 United States District Judge