UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CHRISTOPHER DITTMER #254675,

                         Plaintiff,                    Case No. 20-CV-12147

v.

                                                       Honorable Thomas L. Ludington

CORIZON HEALTH, INC., et al.,

                         Defendants.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART CORIZON DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT OR ALTERNATIVELY TO DISMISS,
DISMISSING JOHN DOE CORIZON PROVIDERS WITHOUT PREJUDICE, AND
DISMISSING COUNTS II AND III**

On August 11, 2020, Plaintiff Christopher Dittmer, a prisoner in the custody of the

Michigan Department of Corrections ("MDOC"), filed a complaint against Defendants Corizon

Health, Inc., Warden John Christensen, and numerous Corizon and MDOC employees. ECF No.

1. Plaintiff alleges that Defendants' failure to render adequate medical care caused him to develop

terminal cancer. *Id.* Plaintiff seeks compensatory and punitive damages under 42 U.S.C. § 1983

for violations of his Fourth and Eighth Amendment rights. *Id.* On September 8, 2020, Defendants

John Christiansen, Richard Russell, Jeanne Bitner, Stanley Kingsley, Barbara Hessbrook, and

Patricia Lamb (collectively, the "MDOC Defendants") filed a motion to dismiss which was later

granted. ECF Nos. 6, 11. Shortly thereafter, Defendants Corizon Health, Inc. ("Corizon"), Keith

Papendick, Jeffrey Bomber, Jordan Block, Susan Wilson (collectively, the "Corizon Defendants")

moved for summary judgment on the defense of exhaustion or, alternatively, to dismiss under

Federal Rule of Civil Procedure 12(b)(6). ECF No. 12. For the reasons stated below, the Corizon

Defendants' Motion will be granted in part and denied in part, the John Doe Corizon Providers will be dismissed without prejudice, and Counts II and III will be dismissed.

## I.

### A.

Central to this case is MDOC's three-step grievance process, governed by MDOC Policy Directive 03.02.130 ("PD 03.02.130"). Grievances are formal complaints filed by prisoners and are intended to address "violations of policy or procedure or unsatisfactory conditions of confinement that personally affect the grievant." ECF No. 6-2 at PageID.111. A prisoner may file a Step I written grievance within five business days after "attempt[ing] to resolve the issue with appropriate staff." *Id.* at PageID.114 (PD 03.02.130). Grievances and grievance appeals are considered filed on the date they are received. *Id.* With respect to form, the directive states, "The issues should be stated briefly but concisely. Information provided is to be limited to the facts (i.e., who, what when, where, why, how)." *Id.*

After the grievance is received, the grievance coordinator determines whether it is acceptable in form. *Id.* at PageID.115. A grievance may be rejected for many reasons, including being vague, duplicative, or untimely. *Id.* at PageID.112. Assuming the grievance survives initial screening, it is forwarded to an "appropriate respondent," as designated by the grievance coordinator pursuant to directive criteria. *Id.* at PageID.115. The respondent then reviews the grievance and investigates the underlying allegations, including interviewing the grievant if necessary. *Id.* at PageID.116. A Step I grievance must be responded to within 15 business days after receipt, and each response is reviewed by the respondent's supervisor. *Id.* at PageID.115. The grievant may appeal the Step I response to a Step II respondent within 10 business days of receiving the response. *Id.* The Step II respondent has 15 business days to respond. *Id.* The same

process is observed for a Step III appeal except that the Step III respondent generally has 60 business days to respond. *Id.* at PageID.117. "The Step III response is final." *Id.*

## B.

Plaintiff Christopher Dittmer is currently housed at Central Michigan Correctional Facility, where MDOC has contracted Corizon to provide medical services to inmates. ECF No. 1 at PageID.2–3. Shortly after Plaintiff was placed in custody in September 2017, he began to complain of pain in his abdomen. *Id.* at PageID.9. At the time, Plaintiff was receiving regular treatment for hypothyroidism. ECF No. 6-3 at PageID.135 (Plaintiff's grievance record).[1] In early 2018, Plaintiff underwent diagnostic testing that revealed low hemoglobin, hematocrit, liver enzyme, and iron levels. ECF No. 1 at PageID.9. Doctors diagnosed him with anemia. *Id.*

Knowing that cancer and liver problems can contribute to anemia, Plaintiff requested further diagnostic testing. *Id.* A John Doe Corizon Provider told him that "further testing would not be done because it was 'too expensive'" and that Corizon has an "unwritten policy . . . to cut costs as often as possible." *Id.* Plaintiff did not receive any anemia treatment other than B-12 shots. *Id.* On December 17, 2018, during a chronic care visit, Plaintiff signed a Release from Responsibility (the "Release") waiving his right to future treatment for hypothyroidism and anemia *Id.* at PageID.10; ECF No. 6-3 at PageID.129. Plaintiff was not wearing his glasses at the time and signed at the direction of a John Doe Corizon Provider.[2] ECF No. 1 at PageID.9. The provider "did

---

[1] "In addition to evaluating the sufficiency of the factual allegations within the four corners of a complaint, courts may consider any exhibits attached to the complaint, matters of public record, and exhibits attached to a defendant's Rule 12 motion, provided that the latter are referred to in the complaint and are central to the claims therein." *Sherer v. Bank of New York Mellon*, No. 14-CV-12641, 2015 WL 4935614, at *3 (E.D. Mich. Aug. 18, 2015) (citing *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008)). The MDOC Defendants filed copies of Plaintiff's grievances, responses, and appeals in support of their motion. *See* ECF No. 6-3. These documents are central to Plaintiff's claims, and both he and the Corizon Defendants rely on them.
[2] Although Plaintiff refers to this provider as a John Doe, he seems to identify the provider on a March 16, 2020 MDOC form as "N.P. Wilson." ECF No. 6-3 at PageID.128.

not tell [Plaintiff] the truth about the form," which Plaintiff thought only waived thyroid treatment. *Id.*

After his anemia diagnosis, Plaintiff continued to experience abdominal pain. *Id.* at PageID.10. The pain appeared to be related to Plaintiff's gall bladder.[3] *Id.* at PageID.10. At some point, Plaintiff complained of his pain to a John Doe Corizon Provider. *Id.* The provider told him that Corizon Defendants John Papendick, M.D., and Jeffrey Bomber, D.O., the Corizon state medical director, "aren't going to do anything for a gall bladder problem." *Id.* Defendants Papendick and Bomber are allegedly in charge of approving inmate treatments. *Id.*

At some point in June 2019, Plaintiff was diagnosed with cancer. *Id.* at PageID.11. In July 2019, Plaintiff sent a kite to Corizon Defendant Susan Wilson, N.P., complaining of severe abdominal pain and requesting antibiotics given his previous bouts with food poisoning. *Id.* at PageID.11. Defendant Wilson told him "he couldn't possibly have a reason to try antibiotics" and forwarded the kite to a provider for review. *Id.* In another kite to Defendant Wilson, Plaintiff stated that the "area below his rib cage was getting extremely painful." *Id.* He suggested that it could be from the recent cancer finding and requested an MRI. *Id.* A John Doe Corizon Provider authorized a colonoscopy but no MRI. *Id.* The colonoscopy revealed ileocecal cancer.[4] *Id.*

At some point thereafter, Plaintiff was scheduled for a surgery consultation. In August 2019, he sent a kite to Defendant Wilson asking why he was not receiving a PET scan before the

---

[3] It is somewhat unclear how the gall bladder explanation originated. In a November 2019 grievance (discussed *infra*), Plaintiff states, "I frequently complained about fatigue and an ongoing pain beneath my right rib cage. I spoke to several different authorities about this matter over several months. I told them they were looking at possible gall bladder problems prior to incarceration and that no gall stones were found . . . They never had an answer when I asked 'what if it isn't the gall bladder.'" ECF No. 6-3 at PageID.135.
[4] Plaintiff's diagnosis timeline seems inconsistent. While the Complaint simply states that Plaintiff was diagnosed in June 2019, his MDOC records indicate that he was diagnosed *after* the July colonoscopy. *See* ECF No. 6-3 at PageID.133. In fact, Plaintiff's response brief states that he was diagnosed in July 2019, not June. ECF No. 8 at PageID.154. The discrepancy is ultimately immaterial for this opinion but worth noting.

consultation. *Id.* at PageID.12. He stated that the PET scan was necessary to ensure that "nothing [was] left to kill [him] later." *Id.* He also reminded Defendant Wilson that he was experiencing pain in "a couple of other areas," including his gall bladder. *Id.* MDOC Defendant Stanley Kingsley, a nurse, "reviewed the [k]ite and signed off on it." *Id.* The next day, diagnostic testing revealed differentiated adenocarcinoma of the colon. *Id.* Further diagnostic testing in late August revealed lesions on Plaintiff's liver and spleen, suggesting that, since his diagnosis, "the cancer had metastasized." *Id.* At the time, he had not started cancer treatment. *Id.*

In September 2019, Corizon Defendant Jordan Block, P.A., ordered a PET/CT scan. *Id.* at PageID.13. The scan revealed that cancer had consumed "nearly half" of Plaintiff's liver and spread to his lymph nodes, kidneys, lungs, and urinary bladder. *Id.* Later in September, Plaintiff sent a kite to another nurse, MDOC Defendant Barbara Hessbrook, asking for an increase in pain medication and questioning why he had not started radiation and chemotherapy. *Id.* at PageID.14. In response, Plaintiff received increased pain medication but no further treatment. *Id.* In October 2019, a John Doe Corizon Provider ordered diagnostic blood testing. *Id.* A subsequent right hemicolectomy and liver biopsy revealed that the cancer was "grossly metastatic" in both lobes of the liver. *Id.* Plaintiff was still not receiving any chemotherapy or radiation treatment. *Id.*

## C.

On November 13, 2019, Plaintiff filed two grievances, STF 19-11-1108-12F1 and STF 19-11-1116-28A. ECF No. 6-3 at PageID.134–35, 141–43. On December 10, 2019, he filed another grievance, STF 19-12-1202-08A. *Id.* at PageID.126. The procedural history of each grievance is considered below.

**1.**

Plaintiff described the issue in Grievance 12F1 as "inadequate health care treatment," adding, "S.T.F. health care denied me early detection and treatment of my cancer, in effect killing me." *Id.* at PageID.135. In support, Plaintiff represented that he had been complaining of abdominal pain since around June 2018 to no avail. *Id.* He also characterized the diagnostic testing performed after his initial cancer diagnosis as an "inexcusable" delay. *Id.* For relief, Plaintiff asked to "[b]egin chemotherapy and radiation treatments immediately." *Id.*

On November 14, 2019, Plaintiff began cancer treatment. ECF No. 1 at PageID.16. On November 26, 2019, Defendant H. Van Dussen, a "health unit manager," denied Grievance 12F1. ECF No. 6-3 at PageID.136. Defendant Van Dussen noted that "[Plaintiff] has continued to receive evaluation and treatment for metastatic cancer." *Id.* He also found no record of abdominal pain complaints prior to July 2019.[5] *Id.* Plaintiff appealed the denial to Step II where, on February 3, 2020, it was upheld by the respondent nurse MDOC Defendant Patricia Lamb. ECF No. 1 at PageID.16. Defendant Lamb concluded that while "[Plaintiff's] concern and sense of urgency is acknowledged and understood[,] [i]t appears that testing and treatment were completed in as timely a manner as possible and in a manner consistent with the recommendations of the specialists." ECF No. 6-3 at PageID.133. Plaintiff's Step III appeal was received on February 28, 2020 and rejected as untimely. *Id.* at PageID.131.

**2.**

Grievance 28A is identical in content to 12F1, except that 28A describes the issue as "deliberate indifference to a serious medical need." *Id.* at PageID.141–43. On November 14, 2019,

---

[5] Plaintiff claims that Defendant Van Dussen either "blatantly ignored [Plaintiff's] previous requests and medical record" or that Defendants "falsif[ied] [his] medical record to remove his requests for treatment." ECF No. 1 at PageID.15.

Grievance 28A was rejected at Step I as duplicative of Grievance 12F1. *Id.* at PageID.141. Plaintiff appealed the Step I rejection, arguing that Grievance 28A could not have been a "duplicate" because the grievance procedures require a "separate grievance form for each issue." *Id.* at PageID.139. On December 18, 2019, the Step II respondent and warden of the facility, MDOC Defendant John Christiansen, upheld the rejection without comment. *Id.* at PageID.140. On January 21, 2020, MDOC Defendant Richard Russell, the Step III respondent and grievance coordinator, also upheld the rejection without comment.[6] *Id.* at PageID.138.

### 3.

Grievance 08A requested that Plaintiff's medical record be amended because he never intended to waive treatment for anemia when he signed the Release. *Id.* at PageID.130. He only intended to waive future thyroid treatments *Id.* On December 20, 2019, the Step I respondent nurse, MDOC Defendant Jeanne Bitner, denied the grievance. *Id.* at PageID.127. She relied on the signed Release and Plaintiff's "history of refusing treatment and diagnostic tests." *Id.* Plaintiff appealed to Step II, where MDOC Defendant Lamb responded on February 26, 2020. *Id.* at PageID.125. Defendant Lamb confirmed that Plaintiff had a visit with "C. Wilson, NP" on December 17, 2018 but could "neither confirm nor refute [Plaintiff's] claim re[garding] the accuracy of the [Release]." *Id.* She advised Plaintiff to submit a form CHJ-227 (Amendment of Health Record Documentation) to the Medical Records Examiner. *Id.* She stated that the form would then be forwarded to the provider who prepared the Release. *Id.* If the provider agreed to Plaintiff's amendment, the amendment would be adopted. *Id.* Defendant Lamb thus marked Grievance 08A as "partially resolved." *Id.*

---

[6] In the Complaint, Plaintiff alleges that Defendant Christiansen "reversed the denial" and then Defendant Russell "denied the entire grievance at Step III." ECF No. 1 at PageID.18. Plaintiff's grievance record, however, unequivocally shows that Defendants Christiansen and Russell both upheld the rejection. ECF No. 6-3 at PageID.138–40.

On March 16, 2020, Plaintiff submitted a form CHJ-227, as suggested, requesting that his medical record be amended to correct the waiver of anemia treatment in the Release. *Id.* at PageID.128. In the form, Plaintiff identifies "N.P. Wilson" as the person he "signed for." *Id.* Plaintiff claims that he spoke with "N.P. Wilson" on March 2, 2020 and that she "agreed it was a possible mistake or misunderstanding and that she would sign to fix this." *Id.* It is unclear what happened with the form CHJ-227 after it was submitted. Plaintiff's Grievance Report indicates that a Step III appeal was received on April 6, 2020. *Id.* at PageID.122. On May 29, 2020, Defendant Russell, the Step III respondent, treated Defendant Lamb's Step II response as a denial and upheld it without comment.[7] *Id.* at PageID.123.

### D.

On January 14, 2020, Plaintiff was en route to cancer treatment in Lansing, Michigan when he was turned back and told the appointment was cancelled. ECF No. 1 at PageID.19. Plaintiff's oncologist explained that "the treatment was cancelled because the MDOC medical department failed to schedule transportation for his January 7, 2020 visit."[8] *Id.* at PageID.19. As a result, Plaintiff suffered a "two or three week[]" delay in chemotherapy, for which he faults Corizon Defendants Papendick and Bomber, given that they control treatment scheduling.[9] *Id.* at PageID.19–20.

Given the severity of Plaintiff's cancer, there is now "no amount of treatment that can remove all of the cancer in [his] body without effectively killing him." *Id.* at PageID.20. His

---

[7] It is unclear why Defendant Russell treated the Step II response as a denial when Defendant Lamb marked Grievance 08A as "partially resolved." Indeed, one of the options available on Defendant Russell's Step III Grievance Response Form provided, "The Step II response on the merits was only PARTIALLY RESOLVED, however, this grievance is now considered RESOLVED." ECF No. 6-3 at PageID.123.

[8] This January 7 visit is not mentioned anywhere else in the Complaint.

[9] The Complaint states that Plaintiff formally grieved this incident on January 21, 2020, but Plaintiff's MDOC Grievance Report reveals no such grievance. *See* ECF No. 6-3 at PageID.122.

oncologist states that "even one month without chemo could result in his untimely death." *Id.* Plaintiff represents that "[f]urther chemotherapy [] has not been approved" and that he is currently receiving no cancer treatment. *Id.* As a result, Plaintiff is "experiencing pain from his cancer as well as severe depression." *Id.* at PageID.21–22.

## E.

On August 11, 2020, Plaintiff brought this action against Defendants Corizon, John Christiansen, Richard Russell, Keith Papendick, Jeffrey Bomber, Jordan Block, Susan Wilson, Jeanne Bitner, H. Van Dussen, Stanley Kingsley, Barbara Hessbrook, Patricia Lamb, John Doe Corizon Providers 1–10, and John Doe MDOC Nurses 1–10. ECF No. 1. Plaintiff brings three claims against all Defendants pursuant to 42 U.S.C. § 1983: deliberate indifference to a serious medical need in violation of the Eighth Amendment (Count I); failure to intervene in violation of the Fourth Amendment (Count II); and civil conspiracy to violate his constitutional rights (Count III). *Id.* at PageID.22–26

On September 8, 2020, the MDOC Defendants moved for summary judgment under Federal Rule of Civil Procedure 56, citing Plaintiff's alleged failure to exhaust his administrative remedies. ECF No. 6. Alternatively, the MDOC Defendants moved to dismiss the Complaint under Rule 12(b)(6) for failure to state a claim. *Id.* This Court dismissed the MDOC Defendants under Rule 12(b)(6) and denied summary judgment as moot. ECF No. 11 at PageID.204 n.10.

On November 17, 2020, the Corizon Defendants moved for summary judgment on the defense of exhaustion or, alternatively, to dismiss under Rule 12(b)(6). ECF No. 12. Timely response and reply briefs have been filed. ECF Nos. 14, 15.

## II.

### A.

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

### B.

Under Rule 12(b)(6), a pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movants' favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and "the tenet that a court must accept as true all of the allegations contained in a complaint is

-10-

inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 679–79 (internal quotation marks and citation omitted).

## III.

The Corizon Defendants move for summary judgment only on the affirmative defense of exhaustion. Under the Prisoner Litigation Reform Act of 1995 ("PLRA"), 110 Stat. 1321–71, as amended 42 U.S.C. §§ 1997e *et seq.*, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006) (internal quotation marks omitted).  Consequently, "the PLRA exhaustion requirement requires proper exhaustion," meaning "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 91–93.

Nevertheless, "failure to exhaust is an affirmative defense under the PLRA, and [] inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). "[T]he failure to exhaust 'must be established by the defendants.'" *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) (quoting *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011)). As movants on an affirmative defense, the Corizon Defendants' "initial summary judgment burden is higher in that [they] must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Id.* at 455–56 (quoting *Cockrel v. Shelby Cty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001)). They have only partially carried their burden here.

-11-

**A.**

The Corizon Defendants argue that Grievance 08A was not exhausted because it failed (1) to "properly name any Defendants" and (2) to grieve the issues alleged in the Complaint. ECF No. 12 at PageID.234. "[I]t is sufficient for a court to find that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *LaFountain v. Martin*, 334 F. App'x 738, 740 (6th Cir. 2009) (quoting *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir.2006)). Grievance 08A complains of "inaccurate information placed in [Plaintiff's] MDOC medical file"; specifically, the allegedly inadvertent waiver of anemia treatment. ECF No. 6-3 at PageID.130. While the Grievance alludes to Plaintiff's cancer diagnosis, the Grievance does not allege the deprivation of adequate medical care. *Id.* Indeed, the only relief that the Grievance requests is the amendment of Plaintiff's medical file and the disclosure of the physician assistant who helped prepare the waiver. *Id.* Accordingly, no rational juror could find that Grievance 08A gave Defendants "fair notice" of Plaintiff's claims of deliberate indifference, failure to intervene, and conspiracy. Grievance 08A was, therefore, not properly exhausted.[10]

**B.**

The Corizon Defendants also contend that Grievance 28A was not exhausted because it was denied at every step as duplicative of Grievance 12F1. ECF No. 12 at PageID.234. As previously stated, Grievance 28A is identical to 12F1 except that 28A describes the issue as "deliberate indifference to a serious medical need," rather than "inadequate health care treatment." *See* ECF No. 6-3 at PageID.141–43. Plaintiff does not respond to Defendants' argument.

---

[10] Because Grievance 08A failed to adequately grieve the issues raised in the Complaint, the question of whether the Grievance adequately named the Corizon Defendants need not be reached.

Accordingly, there is no question that Grievance 28A was properly rejected as duplicative and therefore not properly exhausted.

## C.

The Corizon Defendants next argue that Grievance 12F1 was not exhausted because the Step III appeal was properly rejected as untimely. ECF No. 12 at PageID.234. Plaintiff allegedly mailed the Step III appeal on February 17, 2020, the day he signed and dated it. ECF No. 14 at PageID.268. Two other significant dates appear on the face of the appeal: February 3, 2020, when the Step II appeal was returned to Plaintiff, and February 28, 2020, when the document was stamped as "received" by the MDOC Office of Legal Affairs. ECF No. 6-3 at PageID.132. The Step III rejection from MDOC Defendant Russell, who rejected the appeal as untimely, provides,

> Grievant alleges the Medical Provider denied timely cancer treatment.
>
> In accordance to PD 03.02.130 [sic] grievances are to be rejected when untimely. Pursuant to policy, this grievance was untimely filed by grievant at the Step III appeal. The grievant's Step III appeal was received on February 28, 2020. While providing a grace period for standard mail; the grievance however [sic] was still not received in a suitable timeframe after the due date of February 18, 2020.

ECF No. 6-3 at PageID.131. As Plaintiff notes, the rejection appears to contradict PD 03.02.130, subpart HH, which states,

> To file a Step III grievance, the grievant must *send* a completed Prisoner/Parolee Grievance Appeal form (CSJ-247B) to the Grievance Section *within ten business days* after receiving the Step II response or, if no response was received, within ten business days after the date the response was due, including any extensions.

ECF No. 6-2 at PageID.117 (emphasis added). The operative term is "send," and Plaintiff's date and signature indicate support the inference that he sent the appeal on February 17, 2020.[11]

---

[11] The Corizon Defendants urge this Court to reject Plaintiff's allegation that he mailed the appeal on February 17, 2020 because he has not produced an affidavit or declaration to that effect. ECF No. 15 at PageID.302. However, it is at least reasonable to infer that an appeal would be mailed on the same day it was signed and dated. Furthermore, the Corizon Defendants moved for summary judgment before the

Defendants claim that this is a misinterpretation of the policy directive and cite subpart T, which provides that "Grievances and grievance appeals at all steps shall be considered filed on the date *received* by the Department." ECF No. 6-2 at PageID.114 (emphasis added). However, PD 03.02.130 does not define "Department." If "Department" refers to MDOC generally, then Plaintiff's appeal would presumably have been "received" and therefore "filed" on time. If "Department" refers to some other entity, like the Office of Legal Affairs, then subparts T and HH would seem to frustrate each other.

When previously confronted with this issue, this Court held that the "MDOC grievance procedure provides that the Step III appeal must be *sent* within 10 business days, not that it must be received within that time." *Abbruzzino v. Hutchinson*, No. 08-CV-11534, 2009 WL 799245, at *6 (E.D. Mich. Mar. 24, 2009) (emphasis original) (internal citation and quotation marks omitted). Absent any indication that *Abbruzzino* was wrongly decided, or that the material language in PD 03.02.130 has since changed, this Court will assume that an appeal is timely if sent within ten business days. Accordingly, the reasonable inference that Plaintiff sent his appeal on February 17, 2020 precludes summary judgment on the issue of exhaustion. *See Johannes v. Washington*, No. 14-11691, 2016 WL 1253266, at *6 (E.D. Mich. Mar. 31, 2016) ("[T]o carry their summary-judgment burden . . . [,] Defendants must . . . show that every reasonable jury would think the rejections were proper.").

Furthermore, even if Defendants' interpretation were correct, there would remain a question of fact as to whether the delay between February 18 and 28 should have been excused. Under PD 03.02.130, subpart J, a grievance "shall not be rejected [as untimely] if there is a valid reason for the delay; e.g. transfer." ECF No. 6-2 at PageID.112. "In construing the facts in the light

_____

opening of discovery, and their only supporting declaration appears in their reply brief. *See* ECF No. 15-1 (declaration of MDOC Defendant Richard Russell).

most favorable to plaintiffs, courts have consistently applied this directive to find valid reasons for a delay in filing, and, thus, that the grievance should not have been rejected as untimely." *Johnson v. Allen*, No. 1:15-CV-1329, 2018 WL 1150021, at *2 (W.D. Mich. Mar. 5, 2018) (collecting cases) (internal quotation marks omitted). Here, there was an 11-day difference between when the grievance was allegedly mailed and received. In his Step III rejection, MDOC Defendant Russell implies that the appeal was given "a grace period for standard mail," but it is unclear how long that period was or why the untimeliness of standard mail would not be a "valid reason" for delay. *See* ECF No. 6-3 at PageID.131. Accordingly, even if the appeal was untimely, there is a genuine dispute of material fact as to whether it should have been accepted.

Defendants also suggest that Grievance 12F1 failed to grieve the issues alleged in the Complaint. ECF No. 12 at PageID.237. Here, as before, Defendants have failed to carry their burden. Grievance 12F1 complains specifically of "inadequate health care treatment" and "inexcusable" delays caused by Corizon staff.[12] *See* ECF No. 6-3 at PageID.135. Therefore, a reasonable juror could find that Grievance 12F1 gave the Corizon Defendants "fair notice of the alleged mistreatment or misconduct that forms the basis of [Plaintiff's] claim." *LaFountain*, 334 F. App'x at 740; *see also Bell*, 450 F.3d at 654 ("[A] prisoner's grievance [need not] allege a specific legal theory or facts that correspond to all the required elements of a particular legal

---

[12] To the extent that Defendants raise the issue, the identification of "S.T.F. healthcare" in the Grievance would at least create a question of fact as to whether the Corizon Defendants were adequately named. *See McAdory v. Engelsgjerd*, No. 5:07-CV-13192, 2010 WL 1131484, at *3 (E.D. Mich. Feb. 11, 2010) ("[I]n the medical context[,] the Michigan federal courts have repeatedly held that a grievance naming 'health care' is sufficient to exhaust as to [Correctional Medical Services] because such a grievance provides sufficient notice to prison officials of the nature of the prisoner's complaint . . . ."), *report and recommendation adopted*, No. 07-13192, 2010 WL 1132548 (E.D. Mich. Mar. 23, 2010); *see also Hall v. Raja*, No. CIV.A. 09-10933, 2009 WL 6315346, at *5 (E.D. Mich. Aug. 28, 2009) (holding that claim was exhausted as to all medical staff where grievance named "medical staff" and was not rejected for failure to name individuals involved), *report and recommendation adopted*, No. 09-10933, 2010 WL 1258204 (E.D. Mich. Mar. 30, 2010).

theory.") (quoting *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007)).

## IV.

The Corizon Defendants alternatively move under Rule 12(b)(6) to dismiss the Complaint for failure to state a claim. For reasons discussed below, only Count I states a claim for relief.

## A.

Count I alleges that Defendants were deliberately indifferent to Plaintiff's complaints of pain and requests for treatment, thereby proximately causing his terminal cancer. ECF No. 1 at PageID.22–23. An Eighth Amendment deliberate indifference claim has an objective and subjective component. *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). "First, the failure to protect from risk of harm must be objectively sufficiently serious." *Id.* "[W]hen an inmate had a medical need diagnosed by a physician as mandating treatment, the plaintiff can establish the objective component by showing that the prison failed to provide treatment, or that it provided treatment so cursory as to amount to no treatment at all." *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018) (internal citations and quotation marks omitted). "But when an inmate has received on-going treatment for his condition and claims that this treatment was inadequate, the objective component of an Eighth Amendment claim requires a showing of care 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* (quoting *Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005)). For the subjective component, the prisoner must prove "that each defendant 'subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk' by failing to take reasonable measures to abate it." *Id.* at PageID.738 (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

### 1.

Plaintiff plausibly alleges an objectively serious medical need. Plaintiff complained for months of severe pain in his abdomen. *See* ECF No. 1 at PageID.9–13. Severe pain is a serious medical need. *See Pasley v. Caruso*, No. 10-11805, 2014 WL 6473990, at *9 (E.D. Mich. Nov. 18, 2014) (denying summary judgment on objective component where plaintiff proffered evidence of severe pain complaints); *Ruley v. Corr. Corp. of Am.*, No. CIV. 11-36-ART, 2013 WL 1815039, at *3 (E.D. Ky. Apr. 29, 2013) ("Severe and debilitating pain is a serious medical need . . . ."). Plaintiff also claims that after the pain was diagnosed as cancer, the Corizon Defendants failed to promptly and adequately render treatment, causing his condition to become terminal. ECF No. 1 at PageID.12–21. Cancer is also a serious medical need. *Jones v. Muskegon Cty.*, 625 F.3d 935, 942 (6th Cir. 2010). Accordingly, Count I satisfies the objective component.

### 2.

With respect to the subjective component, Plaintiff plausibly alleges that each Corizon Defendant was deliberately indifferent. Regarding Defendant Wilson,[13] Plaintiff claims to have sent her multiple kites complaining of abdominal pain and requesting treatment. *See* ECF No. 1 at PageID.11–12. For example, Plaintiff alleges that between July and August 2019, Defendant Wilson ignored his requests for cancer screenings. *Id.* Defendants' contention that Defendant Wilson "was attentive" and "provided appropriate medical treatment" seems premised on the fact that Plaintiff eventually received some treatment. *See* ECF No. 12 at PageID.243. However, "[w]hen prison officials are aware of a prisoner's obvious and serious need for medical treatment

---

[13] The Corizon Defendants argue that Defendant Susan Wilson is not the "N.P. Wilson" that Plaintiff describes in his Complaint and grievances. *See* ECF No. 12 at PageID.235, 243. As Plaintiff notes, however, this claim is based on medical records that the Corizon Defendants have not placed before the Court. *See* ECF No. 14 at PageID.278–79. Accordingly, insofar as Plaintiff has stated a claim against Defendant Susan Wilson, the factual question of whether she or someone else was responsible for the conduct alleged cannot be resolved without discovery.

and delay medical treatment of that condition for non-medical reasons, their conduct in causing the delay creates the constitutional infirmity." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also LeMarbe v. Wisneski*, 266 F.3d 429, 439 (6th Cir. 2001) ("[A] prisoner is not required to show that he was literally ignored by the staff to prove an Eighth Amendment violation, only that his serious medical needs were consciously disregarded.") (internal quotation marks omitted). Accordingly, Plaintiff's allegations of a knowing delay are sufficient for purposes of Rule 12(b)(6).

Plaintiff's allegations regarding Defendant Block are less detailed but nonetheless sufficient. He alleges that Defendant Block ordered a PET scan in September 2019 "only after" diagnostic testing in August 2019 revealed that the cancer had metastasized. ECF No. 1 at PageID.12–13. Plaintiff further alleges that Defendant Block knew of his inadequate treatment because he tried to resolve the matter with Defendant Block before filing Grievance 12F1. ECF No. 6-3 at PageID.135. Defendants argue that Plaintiff has failed to allege Defendant Block's "specific involvement," ECF No. 12 at PageID.242, but Plaintiff's allegations, if true, would prove that Defendant Block consciously disregarded Plaintiff's need for cancer treatment—a clear violation of the Eighth Amendment. *See Stefan v. Olson*, 497 F. App'x 568, 576 (6th Cir. 2012) ("[P]rison officials who have been alerted to a prisoner's serious medical needs are under an obligation to offer medical care to such a prisoner. If a prisoner asks for and needs medical care, it must be supplied.") (internal citations and quotation marks omitted). Consequently, Plaintiff has adequately pled the deliberate indifference of Defendant Block.

Plaintiff's allegations are also sufficient with respect to Defendants Papendick and Bomber. Plaintiff claims that Defendants Papendick and Bomber "schedul[e] all appointments and treatments for inmates receiving medical care" and therefore were "necessarily involved" in his

denial of treatment. ECF No. 1 at PageID.19–20. While Defendants deny that either Papendick or Bomber were "personally involved" in or "subjectively aware" of Plaintiff's complaints,[14] ECF No. 12 at PageID.241, Plaintiff identifies at least one instance where his chemotherapy was delayed because Papendick and Bomber neglected to schedule transportation for an oncology appointment. ECF No. 1 at PageID.19–20. The failure to schedule medically necessary visits may constitute deliberate indifference. *See Pendermon v. Hounshell*, No. 5:18-CV-495-CHB-MAS, 2020 WL 4554651, at *5 (E.D. Ky. Feb. 18, 2020) (holding that prison official's "failure to make a gastroenterologist appointment" presented genuine issue of material fact on deliberate indifference), *report and recommendation adopted as modified*, No. 5:18-CV-495-CHB-MAS, 2020 WL 3483558 (E.D. Ky. June 26, 2020). Accordingly, Plaintiff plausibly alleges that Defendants Papendick and Bomber were deliberately indifferent to his serious medical needs.

Plaintiff's allegations against Defendant Corizon require a different analysis. "Private corporations that perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 . . . [but] cannot be held liable on the basis of respondeat superior or vicarious liability." *Rouster v. Cty. of Saginaw*, 749 F.3d 437, 453 (6th Cir. 2014) (internal quotation marks and citations omitted). Instead, private corporations can be held liable under § 1983 of a municipality under *Monell*. *See St. v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996). "Accordingly, a plaintiff must prove both that his or her constitutional rights were violated and that a policy or custom of the [private corporation] was the moving force behind the deprivation of the plaintiff's rights." *Rouster*, 749 F.3d at 453.

---

[14] As for any claim under § 1983, Plaintiff's "allegations must demonstrate that each defendant [], through his or her own individual actions, personally violated [P]laintiff's rights." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (emphasis in original) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). "It is well-settled that [g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of respondeat superior." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) (internal quotation marks omitted).

Plaintiff alleges that after he was diagnosed with anemia in 2018, he sought additional testing given the severe pain in his abdomen. ECF No. 1 at PageID.9. He claims that a John Doe Corizon Provider told him that "further testing would not be done because it was 'too expensive' and that this was part of an unwritten policy for Corizon to cut costs as often as possible." *Id.* Elsewhere in the Complaint, Plaintiff recounts an incident where he complained of gall bladder pain to a John Doe Corizon Provider but the provider told him that Defendants Papendick and Bomber, as Corizon policymakers, "aren't going to do anything for a gall bladder problem." *Id.* at PageID.10. Plaintiff thus surmises that "Corizon maintains a policy to deny necessary medical care for non-medical reasons." *Id.* at PageID.21.

Defendants reject this theory as a "straw man argument [sic] [that] amounts to nothing more than threadbare recitals." ECF No. 15 at PageID.304. To the contrary, though, "[f]ederal district courts in Michigan have expressly found that a complaint identifying a policy of denying care to save costs may be sufficient to state a *Monell* claim." *Ferguson v. Corizon*, No. 12-11702, 2013 WL 4758196, at *10 (E.D. Mich. Sept. 4, 2013) (collecting cases). Accordingly, Plaintiff has plausibly alleged a policy of denying care in violation of the Eighth Amendment for which Defendant Corizon may be held liable.

Based on the foregoing, the Corizon Defendants' Motion to Dismiss will be denied with respect to Count I.

**B.**

Count II alleges that the Corizon Defendants violated Plaintiff's Fourth Amendment rights by failing to intervene in his medical treatment despite the "opportunity and means to prevent the unlawful deliberate indifference." ECF No. 1 at PageID.23–24. This theory was previously

rejected as a matter of law in the order dismissing the MDOC Defendants. ECF No. 11 at

PageID.208–09. As explained there,

> Plaintiff's theory seems premised on a misunderstanding of the Fourth and Eighth Amendments. "The Fourth Amendment prohibits the use of excessive force by arresting and investigating officers." *Smoak v. Hall*, 460 F.3d 768, 783 (6th Cir. 2006). As a corollary, "a police officer has a duty to try and stop another officer who summarily punishes a person in the first officer's presence." *McHenry v. Chadwick*, 896 F.2d 184, 188 (6th Cir. 1990) (citing *Bruner v. Dunaway*, 684 F.2d 422, 426 (6th Cir. 1982)). The Sixth Circuit has extended this duty to correctional officials, including hospital security and nurses. *McHenry*, 896 F.2d at 188 ("[A] correctional officer who observes an unlawful beating may, nevertheless, be held liable under § 1983 without actively participating in the unlawful beating"); *Durham v. Nu'Man*, 97 F.3d 862, 868 (6th Cir. 1996) (holding that jury could find hospital security officer and nurse liable for failing to intervene while inmate was assaulted by hospital security).
>
> However, the Sixth Circuit has never extended the failure to intervene to medical treatment—and for good reason. In addition to prohibiting deliberate indifference to a prisoner's medical needs, *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), the Eighth Amendment—not the Fourth—protects prisoners from excessive force. *Hopper v. Phil Plummer*, 887 F.3d 744, 751 (6th Cir.) (internal citation omitted), *reh'g denied* (May 1, 2018), *cert. denied sub nom. Plummer v. Hopper*, 139 S. Ct. 567 (2018). Consequently, extending the failure to intervene to medical treatment would entangle two distinct Eighth Amendment protections. In fact, every failure-to-intervene case cited by Plaintiff involved excessive force under the Eighth Amendment. *See, e.g.*, *Durham v. Nu'Man*, 97 F.3d 862, 868 (6th Cir. 1996); *McHenry v. Chadwick*, 896 F.2d 184, 188 (6th Cir. 1990; *Penman v. Correct Care Sols.*, No. 5:18-CV-58-TBR, 2018 WL 6242153, at *5 (W.D. Ky. Nov. 28, 2018). The lone exception is *Bunkley v. City of Detroit, Michigan*, 902 F.3d 552 (6th Cir. 2018), which concerned a false arrest in violation of the Fourth Amendment.

*Id.* (footnote omitted). Plaintiff responds only by citing *Armbruster v. Shah*, No. 3:16-CV-544-

SMY-MAB, 2019 WL 5874335 (S.D. Ill. July 23, 2019), *report and recommendation adopted*,

No. 16-CV-544-SMY-MAB, 2019 WL 4200601 (S.D. Ill. Sept. 5, 2019). However, *Shah*

recognized a failure to intervene theory under the Eighth Amendment, not the Fourth. *Id.* at *1,

20. And as recently explained by the Sixth Circuit, "because only the unnecessary *and wanton*

infliction of pain implicates the Eighth Amendment, a prisoner advancing such a claim must, at a

minimum, allege deliberate indifference to his serious medical needs. It is *only* such indifference

that can violate the Eighth Amendment." *Rhinehart v. Scutt*, 894 F.3d 721, 736 (6th Cir. 2018) (emphasis original) (internal citations and quotation marks omitted). Accordingly, Count II will be dismissed.

## C.

Count III alleges that Defendants conspired with one another to deprive Plaintiff of adequate care. ECF No. 1 at PageID.25–26. To prove a civil conspiracy, Plaintiff must show that "there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (quoting *Hooks v. Hooks*, 771 F.2d 935, 944 (6th Cir. 1985)). "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). However, the Sixth Circuit "do[es] not require direct evidence; it is enough to produce circumstantial evidence sufficient to reasonably infer the existence of a conspiracy." *Jacobs v. Alam*, 915 F.3d 1028, 1043 (6th Cir. 2019).

The conspiracy against Plaintiff allegedly took "several forms":

a. Defendants intentionally misled Dittmer to get him to waive his anemia treatment.

b. Defendants received multiple complaints from Dittmer about his pain and concerns about lack of care, both verbal and written, and refused to act in accordance with law; and

c. Defendants, at all relevant times, had access to all of Dittmer's medical records and were aware of his condition and chose not to do anything to help him.

*Id.* at PageID.25. The Corizon Defendants correctly note that Plaintiff's allegations are "impermissibly vague and conclusory." ECF No. 12 at PageID.249. Indeed, Plaintiff's conspiracy claim against the Corizon Defendants suffers from the same deficiency as his conspiracy claim

against the MDOC Defendants. *See* ECF No. 11 at PageID.209–11. Specifically, Plaintiff has failed to plausibly allege either a "single plan" or "general conspiratorial objective" that links the allegedly unlawful conduct of each Corizon Defendant. *See Spadafore*, 330 F.3d at 854. At most, Plaintiff has alleged that Corizon and several of its employees were deliberately indifferent to his serious medical needs. Without more, these allegations do not establish a conspiracy. *See Thompson v. Corizon, Inc.*, No. 2:20-CV-158, 2020 WL 5361994, at *5 (W.D. Mich. Sept. 8, 2020) (dismissing conspiracy claim against Corizon providers where prisoner "provided no allegations establishing a link between the alleged conspirators or any agreement between them"). Accordingly, Count III will be dismissed.[15]

### D.

The John Doe Corizon Providers will also be dismissed. "In general, the use of unnamed defendants is not favored in the federal courts." *Carter v. Wackenhut Corp.*, No. CIV.A 09-14627, 2010 WL 2696985, at *3 (E.D. Mich. Mar. 15, 2010) (citing *Colle v. Brazos County, Tex.*, 981 F.2d 237, 243 (5th Cir.1993)), *report and recommendation adopted*, No. 09-14627, 2010 WL 2696984 (E.D. Mich. July 6, 2010). "An inmate who brings a civil rights complaint must specifically identify each defendant against whom relief is sought, and must give each defendant notice of the action by serving upon him a summons and copy of the complaint." *Reed-Bey v. Pramstaller*, No. CIV.A. 06-10934, 2007 WL 2421422, at *1 (E.D. Mich. Aug. 23, 2007).

Under Federal Rule of Civil Procedure 4(m), Plaintiff had 90 days from when he filed the Complaint on August 11, 2020 to identify and serve the John Doe Corizon Providers. Over five

---

[15] Plaintiff states that "[i]f this Court should determine that Plaintiff's Complaint requires mores specificity or other modification, Plaintiff requests that this Court grant him leave to amend." ECF No. 14 at PageID.289. The proper procedure for requesting leave to amend a filing is set forth in Federal Rule of Civil Procedure 15 and Local Rule 15.1. This Court will not grant leave to amend before such procedure is observed.

months have now passed, and he has neither served the John Doe Corizon Providers nor explained his failure to do so. Consequently, "[a]n appropriate disposition of the claims against the unnamed defendants is an order dismissing them without prejudice, so that Plaintiff's ability to bring an action within the limitations period is preserved, should he later learn their identities." *Winburn v. Davis*, No. 08-14996, 2009 WL 3004555, at *8 (E.D. Mich. Sept. 16, 2009); *see also McPherson v. Caruso*, No. 2:09-CV-11766, 2010 WL 846856, at *6 (E.D. Mich. Mar. 5, 2010) (dismissing without prejudice prisoner's § 1983 claims against John Doe defendants).

### V.

Accordingly, it is **ORDERED** that the Corizon Defendants' Motion for Summary Judgment or in the Alternative to Dismiss, ECF No. 12, is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that the John Doe Corizon Providers are **DISMISSED WITHOUT PREJUDICE**.

It is further **ORDERED** that Counts II and III are **DISMISSED WITH PREJUDICE**. Count I may proceed against the Corizon Defendants.

Dated: January 25, 2021                 s/Thomas L. Ludington
                                             THOMAS L. LUDINGTON
                                             United States District Judge